UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 17-4399 DSF (PJWx) | Date | 1/23/18 |
| Title | D'Ann M. Patterson v. The Capital Group Companies, Inc., et al. | | |

DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Defendants' Motion to Dismiss

Defendants Capital Group Companies, Inc. (Capital Group), the Board of Directors of the Capital Group Companies, Inc. (Board), the U.S. Retirement Benefits Committee of the Capital Retirement Savings Plan (Committee), Capital Guardian Trust Company (CGTC), Capital Research and Management Company (CRMC), and Capital International, Inc. (CII) (collectively, Defendants) move to dismiss Plaintiff's first amended complaint (FAC).

## I.   INTRODUCTION

Defendants sponsor and administer the Capital Retirement Savings Plan, a defined contribution pension plan for Capital Group's employees. FAC ¶ 1, 18-23. Plaintiff D'Ann Patterson has participated in the Plan between June 13, 2011 and the present (Relevant Period). Id. ¶ 2, 17.

During the Relevant Period, the Plan offered between 38 and 46 investment options. Id. ¶ 32. According to Plaintiff, more than 90% of those options were unduly expensive Capital Group-affiliated investment options managed by CGTC, CRMC, and CII. Id. ¶ 5–6, 33. The Committee also "selected and retained the more expensive R5 share class of the Capital Group-affiliated investment options . . . for a number of years

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

despite the availability of the less expensive R6 share class." Id. ¶¶ 7. Nearly all of the Plan's assets were invested in Capital Group-affiliated investment options. Id. ¶ 35.

Plaintiff brings claims for (1) breach of the fiduciary duty of loyalty and exclusive purpose in violation of ERISA § 404(a)(1) and (a)(1)(A); (2) breach of the fiduciary duty of prudence in violation of ERISA § 404(a)(1)(B); (3) prohibited transactions between the Plan and a fiduciary in violation of ERISA § 406(b)(1), (2), (3); (4) prohibited transactions between the Plan and a party in interest in violation of ERISA § 406(a)(1)(C), (D); (5) failure to adequately monitor other fiduciaries in violation of ERISA § 404; (6) co-fiduciary liability under ERISA § 405; and (7) non-fiduciary participation under ERISA § 502(a)(3). See FAC ¶¶ 354–434. Plaintiff specifically challenges 44 different Capital-Group affiliated investment options. Id. ¶¶ 36–318. Defendants argue that Plaintiff's first and second claims inadequately allege a breach of fiduciary duty, that Plaintiff's third and fourth claims fall under various exemptions to ERISA § 406, and that the remaining claims are derivative. Defendants also contend Plaintiff's claims are time-barred. Id. at 23.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (ellipsis in original; internal quotation marks omitted). But Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson, 551 U.S. at 94. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in original, citation and internal quotation marks omitted). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (2007). This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Ruling on a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." Id. at 679 (alteration in original, internal quotation marks and citation omitted.)

### III.   DISCUSSION

#### A.   STATUTE OF LIMITATIONS

The limitations period for all claims arising under ERISA is:

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation[.]

29 U.S.C. § 1113(a). Defendants contend Plaintiff had actual knowledge of all alleged breaches based on fee disclosure statements provided to Plaintiff; therefore the three-year limitations period applies.

ERISA's statute of limitations requires courts to "first isolate and define the underlying violation upon which [plaintiff's] claim is founded." Meagher v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan, 856 F.2d 1418, 1423 (9th Cir. 1988); accord Tibble v. Edison Int'l (Tibble II), 135 S. Ct. 1823, 1829 (2015) (courts must "consider[] the contours of the alleged breach of fiduciary duty" when applying the statutory bar).

The court must next consider whether the plaintiff had "actual knowledge" of the breach or violation to determine whether § 1113(1) or (2) applies. Under the "actual knowledge" standard, the "statute of limitations is triggered by [plaintiff's] knowledge of the transaction that constituted the alleged violation, not by [her] knowledge of the law."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Meagher, 856 F.2d at 1423.  If a plaintiff has actual knowledge, the three-year limitations period under § 1113(2) applies.  See 29 U.S.C. § 1113(2).

The "earliest date of actual knowledge of a breach begins the limitations period, even if the breach continues."  Tibble v. Edison Int'l (Tibble III), 843 F.3d 1187, 1196 (9th Cir. 2016), citing Phillips v. Alaska Hotel & Rest. Employees Pension Fund, 944 F.2d 509 (9th Cir. 1991).  "However, when a plaintiff does not have actual knowledge of a breach of a continuing duty and § 1113(1) applies, the rationale for Phillips' continuing duty limit . . . is no longer relevant."  Id.  Thus, "each new breach begins a six-year limitations period under § 1113(1)."  Id. at 1197; see also Tibble II, 134 S. Ct. at 1828–29 ("a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones.").

   1.   **Breach of Fiduciary Duty**

Plaintiff's first and second claims allege a breach of the fiduciary duty of loyalty and prudence.  Specifically, Plaintiff claims Defendants were disloyal in "selecting, retaining, and failing to remove . . . unduly expensive Capital Group-affiliated investment options [and] permitting Plan participants to invest in the more expensive R5 share class . . . despite the availability of the cheaper R6 share class" because R5 allegedly generated substantial revenue for Defendants.  FAC ¶¶ 358–60.  Plaintiff's imprudence claim relies on substantially similar reasoning.  See id. ¶¶ 368–70.  Plaintiff also alleges she had no "knowledge of all material facts . . . necessary to understand that Defendants engaged in unlawful conduct in violation of ERISA . . . ."  Id. ¶ 341.  Thus, Plaintiff contends that § 1113(a)(1) applies and her claims are timely.

Defendants argue that Plaintiff's blanket disavowal is insufficient to demonstrate a lack of actual knowledge because she received regular fee disclosure statements that made her aware of the allegedly expensive fees.  However, in Tibble v. Edison Int'l (Tibble I), 729 F.3d 1110, 1121 (9th Cir. 2013) (overruled on other grounds), the Ninth Circuit held that such disclosures were "evidence of the wrong type of knowledge" for a claim alleging the defendant made an imprudent investment.  Rather, the "actual knowledge" standard requires "some knowledge of how the fiduciary selected" the allegedly imprudent investment.  Id. (citation and quotation marks omitted); see also Waller v. Blue Cross of Cal., 32 F.3d 1337, 1341 (9th Cir. 1994) (declining to "equate knowledge of the purchase of annuities . . . with actual knowledge of the alleged breach of fiduciary duty").  "[M]ere notification that retail funds were in the Plan menu falls

short of providing 'actual knowledge of the breach or violation.'" Tibble I, 729 F.3d at 1121 (quoting 29 U.S.C. § 1113(2)).

Here, as in Tibble I, Plaintiff's claims are based on allegations that Defendants continuously made disloyal and imprudent decisions relating to the funds. Plaintiff did not have actual knowledge of Defendants' process for selecting and retaining the investment options. Accordingly, § 1113(1) applies and each new breach by Defendants begins a new limitations period. And Plaintiff alleges the Plan did not switch to R6 share classes until 2014 and the fees charged were unduly expensive even after the switch. FAC ¶¶ 7 n.1, 358–60. Accordingly, Plaintiff's first and second claims are timely.

### 2. Prohibited Transactions

Plaintiff's third and fourth claims allege Defendants violated ERISA's prohibition against certain self-interested transactions by charging excessive fees on the Capital Group-affiliated investment options, leading to a windfall for Defendants. See FAC ¶¶ 374–401 (citing 29 U.S.C. § 1106). Unlike her fiduciary duty claims, Plaintiff had actual knowledge regarding her prohibited transaction claims. For her third and fourth claims, the "underlying violation" is the collection of fees from Capital Group-affiliated funds. See Ziegler v. Conn. Gen. Life Ins. Co., 916 F.2d 548, 551 (9th Cir. 1990) (alleged breach occurred on execution of contract though no harm had yet been suffered). Here, Plaintiff knew Defendants had caused the Plan to engage in self-interested transactions when the Plan included Capital Group-affiliated funds. Several of the investment options named in the FAC are clearly affiliated with Capital Group. See, e.g., FAC ¶¶ 47, 115 (listing investment funds with "CG" or "Capital" in the name). Plaintiff also knew that those investment options extract fees. Id. ¶¶ 5–6.

With the exception of three funds,[1] Defendants' selection of the investment options and initial collection of fees occurred outside of the three-year limitations period.

Plaintiff argues that each new collection of fees started a new limitations period, making her third and fourth claims timely. But "'when there is a series of discrete but related breaches' . . . the § 1113(2) limitations period does not begin anew with each

---

[1] The CG Emerging Markets Growth Fund was added to the Plan in "late 2015 or early 2016." FAC ¶ 50. The American Funds Developing World Growth and Income Fund and the American Funds 2060 Target Date Retirement Fund were both added to the Plan in "late 2014 or early 2015." Id. ¶¶ 102, 306.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

related breach." Tibble III, 843 F.3d at 1196 (quoting Phillips, 944 F.2d at 520–21). Accordingly, Plaintiff's third and fourth claims are time-barred except as they relate to the CG Emerging Markets Growth Fund, the American Funds Developing World Growth and Income Fund, and the American Funds 2060 Target Date Retirement Fund.

B.   FAILURE TO STATE A CLAIM

   1.   **Breach of Fiduciary Duty**

ERISA § 404(a)(1) imposes both a duty of loyalty and a duty of prudence. Specifically, fiduciaries are required to discharge their duties:
   (A)   for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan;
   (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]
29 U.S.C. § 1104(a)(1)(A), (B). Courts often look to the common law of trusts "[i]n determining the contours of an ERISA fiduciary's duty." Tibble II, 135 S. Ct. at 1828.

Under the common law of trusts, the duty of loyalty prohibits a fiduciary from "engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests." REST. (THIRD) OF TRUSTS § 78 (2007). And the duty of prudence requires trustees to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." Tibble III, 843 F.3d at 1197 (quoting REST. (THIRD) OF TRUSTS § 90(c)(3)). Courts have routinely recognized that a fiduciary's decision to invest in a materially identical fund with higher fees will "lose not only the money spent on higher fees, but also . . . the money that the portion of their investment spent on unnecessary fees would have earned over time." Id. The duty of prudence also includes a duty to monitor and review investments "in a manner that is reasonable and appropriate to the particular investment action, and strategies involved. Tibble II, 135 S. Ct. at 1828–29.

However, courts have routinely held that a fiduciary's failure to offer the cheapest investment option is not enough by itself to state a claim for a breach of fiduciary duty. "The fact that it is possible that some other funds might have had even lower [expense] ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

to find and offer the cheapest possible fund." Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009), cited with approval in Tibble I, 729 F.3d at 1135 ("We agree [with the Seventh Circuit.]") As the Ninth Circuit stated: "There are simply too many relevant considerations for a fiduciary, for that bright-line approach to prudence to be tenable." Tibble I, 729 F.3d at 1135; see also Braden v. Wal –Mart Stores, Inc., 588 F.3d 585, 601 n.7 (8th Cir. 2009) ("[W]e do not suggest that a claim is stated by a bare allegation that cheaper alternative investments exist in the marketplace."). Rather, plaintiffs must plead some other grounds to plausibly suggest wrongdoing. See, e.g., Terraza v. Safeway, Inc., 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017) (denying motion to dismiss where investment option consistently underperformed and had high fees); Urakhchin v. Allianz Asset Management of America, L.P., 2016 WL 4507117 at *6–7 (C.D. Cal. Aug. 5, 2016) (same).

Here, Plaintiff's claim for breach of the fiduciary duty is premised on high fees, including Defendant's failure to switch investment options from R5 to the cheaper R6 share classes, and the fact that the vast majority of the Plan options were proprietary funds. Plaintiff's present allegations[2], however, are not sufficiently plausible to survive a motion to dismiss.

It may not be necessary for Plaintiff to allege that the challenged funds underperformed, but Plaintiff must at least allege facts that plausibly suggest the fees were unjustified. That Defendants "could" have chosen funds with lower fees, that "similar" Vanguard funds charged lower fees, and that all or most of the challenged funds were Defendants' own financial products are insufficient, when viewed in context, to create a plausible inference of wrongdoing. Although a motion to dismiss is not the place for the Court to find fees reasonable (or excessive) as a matter of law, the fees alleged here are not so obviously excessive as to meet the plausibility test standing alone. Unquestionably, fiduciaries need not choose the cheapest fees available to the exclusion of other considerations—or all funds seeking investments from trusts and pension plans would have to charge the same fees regardless of the type of fund, management approach or services, performance, etc. in order to attract institutional clients. As Plaintiff notes, Capital Group "ranks among the largest investment management companies world-wide with $1.39 trillion in assets under management . . . ." FAC ¶ 18. It appears obvious that fiduciaries are investing substantial amounts in the Capital Group funds.

---

[2] As Defendants note, and Plaintiff conceded at oral argument, after discussions with defense counsel, Plaintiff's counsel deleted allegations relating to underperformance that had appeared in the original complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Plaintiff's allegation that, for most of the challenged funds, Defendants failed to switch the Plan from the more expensive R5 share class to the less expensive R6 share class does not bolster her claim.  In Braden, the Eighth Circuit considered similar allegations with one key difference—the plaintiff in Braden alleged that both share classes had the same return on investment and differed only in price.  588 F.3d 585, 595–96.  Plaintiff here makes no such allegations; she alleges only that the R6 share class was cheaper and Defendants could have switched share classes earlier.  But fiduciaries are required to consider factors beyond price when choosing investment options.  See Loomis v. Exelon Corp., 658 F.3d 667, 671–72 (7th Cir. 2011) (retail funds may have certain advantages over institutional funds, such as higher liquidity), cited with approval in Tibble I, 729 F.3d at 1135; see also White v. Chevron Corp., 2017 WL 2352137 at *14 (N.D. Cal. May 31, 2017).  Plaintiff's allegations do not "nudge [her claims] across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

Defendants' Motion is GRANTED as to Plaintiff's first and second claims.

**2.      Prohibited Transactions**

As explained above, Plaintiff's third and fourth claims alleging that Defendants engaged in prohibited transactions are time-barred except as to the CG Emerging Markets Growth Fund, the American Funds Developing World Growth and Income Fund, and the American Funds 2060 Target Date Retirement Fund.  But Defendants also contend the claims should be dismissed because the transactions are exempt under the PTE 77-3.  Plaintiff argues that PTE 77-3 does not apply because her prohibited transaction claims concern the collection of fees, not the sale of the mutual funds at issue.  The Court is not persuaded.

PTE 77-3 allows plans sponsored by investment fund advisors to invest in affiliated investment funds if the plan does not:
- (a)    pay any fees to the investment adviser except via the investment company's payment of its standard advisory and other fees;
- (b)    pay a redemption fee to any party other than the investment company itself;
- (c)    pay a sales commission; and
- (d)    have dealings with the investment company on terms less favorable than dealings between the investment company and other shareholders.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

See 42 Fed. Reg. 18,734–35 (1977); see also Mehling v. N.Y. Life Ins. Co., 163 F. Supp. 2d 502, 510 (E.D. Penn. 2001). If all four conditions are met, the § 406 prohibited transactions provision does not apply.

Plaintiff does not allege that the Plan pays management or advisory fees, except for Defendants' standard fees or that the plan pays redemption fees or sales commissions. The remaining funds were always offered under the R6 share class; Plaintiff does not allege any facts that suggest the Plan was dealt with less favorably than other shareholders. Id. at 18,735; compare Gipson v. Wells Fargo & Co., 2009 WL 702004 at *4 (D. Minn. Mar. 13, 2009) (PTE 77-3 did not apply because defendants invested in the more expensive category of stock rather than the cheaper "institutional" category). All four conditions are met for the three remaining funds.

That Plaintiff challenges only Defendants' collection of fees rather than the sale of the investment funds to the Plan does not change the analysis. PTE 77-3 requires only that the fees charged be the company's standard fees. See, e.g., Mehling, 163 F. Supp. 2d at 510 ("Plaintiffs do not allege that the fees paid by the Plans are not in compliance with the requirements of PTE 77-3 . . . ."); Shirk v. Fifth Third Bancorp, 2008 WL 4449024 at *15 (S.D. Ohio Sept. 26, 2008) ("PTE 77-3 provides that employers . . . who offer their own proprietary funds to their employees in a 401(k) Plan are only permitted to charge the Plan a single investment management fee). The condition is met here.

PTE 77-3 applies and Defendants' Motion is GRANTED as to Plaintiff's third and fourth claims.[3]

### 3. Fifth through Eighth Claims

As both parties acknowledge, Plaintiff's remaining claims are derivative. See Motion at 20–21; Opp. at 21; see also White, 2017 WL 2352137 at *22 (duty to monitor claim is derivative of fiduciary duty claim); In re Disney ERISA Litig., 2017 WL 1505129 at *2 (co-fiduciary liability claim is derivative of fiduciary duty claim). Plaintiff's fifth claim alleges that the Board failed to monitor the fiduciaries of the Plan. Her sixth and seventh claims seek to hold certain Defendants liable as co-fiduciaries or non-fiduciaries who have participated in the alleged fiduciary breaches. Plaintiff's eighth

---

[3] Because the Court dismisses Plaintiff's third and fourth claims under PTE 77-3, the Court does not reach Defendants' arguments that the challenged transactions do not involve "assets of the plan" argument and the reasonable compensation exemption applies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

claim is for attorneys' fees. Because none of Plaintiff's other causes of action states a claim, the fifth through eighth claims must also be dismissed. Defendant's Motion is GRANTED as to Plaintiff's fifth, sixth, seventh, and eighth claims.

### IV. CONCLUSION

The motion to dismiss is GRANTED. Plaintiff's First Amended Complaint is dismissed with leave to amend consistent with this order. An amended complaint must be filed and served no later than February 20, 2018. Failure to file by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add defendants or claims must be sought by a separate, properly noticed motion. A "red-lined" version of the amended complaint must be provided to chambers email.

IT IS SO ORDERED.